UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL OMABELE,                                Case No. 12-11938

                    Plaintiff,                 Nancy G. Edmunds
v.                                             United States District Judge

HENRY FORD HEALTH SYSTEMS, *et al*,            Michael Hluchaniuk
                                               United States Magistrate Judge
                    Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS FOR SUMMARY JUDGMENT (Dkt. 67, 69)**

## I.      PROCEDURAL HISTORY

Plaintiff filed this employment civil rights case on April 30, 2012.  (Dkt. 1).

This matter was referred for all pretrial proceedings to then Magistrate Judge Mark

A. Randon.  (Dkt. 5).  On March 19, 2014, this matter was reassigned to the

undersigned and then referred for all pretrial proceedings on March 29, 2014.

(Dkt. 70).  On March 28, 2014, defendant Act-1 Personnel Services (Act-1) filed a

motion for summary judgment.  (Dkt. 67).  On March 28, 2014, defendant Henry

Ford Health Systems (HFHS) filed a motion for summary judgment.  (Dkt. 69).

Plaintiff requested additional time to respond to the motions for summary

judgment, which was granted.  (Dkt. 73; Text Only Order dated April 23, 2014).

Plaintiff filed a combined response to the motions for summary judgment on May

30, 2014. (Dkt. 74). Defendants filed replies on June 16, 2014. (Dkt. 75, 77).

Plaintiff then moved to amend his response to the motion for summary judgment. (Dkt. 83). Plaintiff was permitted the opportunity to amend his response to the motions for summary judgment, but he was explicitly instructed that he was not permitted to use any evidence that was not provided to defendants before the close of discovery. (Dkt. 90, Pg ID 1015). Plaintiff was also warned that no further extensions or supplementations would be permitted. (Dkt. 90, Pg ID 1014). Plaintiff filed his amended response to the motions for summary judgment on December 31, 2014. (Dkt. 91). Defendants both filed amended reply briefs. (Dkt. 92, 94).

On January 14, 2015, defendant Henry Ford filed a motion to strike portions of plaintiff's amended summary judgment response because it violates the Court's December 3, 2014 Order. (Dkt. 93). Plaintiff filed a response on February 3, 2015, essentially admitting that he used evidence not previously disclosed. (Dkt. 96). Defendant filed a reply on February 6, 2015. (Dkt. 98). The motion to strike was granted. (*See* Text-Only Order dated February 12, 2015). At the same time, the undersigned recommended a *sua sponte* dismissal of plaintiff's claims for various violations of the Court's orders and explaining the reasoning for granting the motion to strike. (Dkt. 99). This report and recommendation was accepted in part and rejected in part by the District Court. (Dkt. 102). The Court concluded

2

that "[p]laintiff is foreclosed from relying on any new evidence in response to Defendants' motions for summary judgment.  Furthermore, the Court returns this matter to the Magistrate Judge with instructions to reconsider Defendants' motions for summary judgment without regard to any evidence identified in Henry Ford's motion to strike."  (Dkt. 102, Pg ID 1288).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment (Dkt. 67, 69) be **GRANTED** and plaintiff's complaint be **DISMISSED** with prejudice.

## II.    FACTUAL BACKGROUND

On September 16, 2010, plaintiff applied for and began employment with Act-1, a company that assigns temporary workers to its clients, including HFHS, on an as-needed basis.  (Dkt. 69, Ex. A, Act-1 Application; Ex. B, Plaintiff Dep. 16-17).  According to HFHS, plaintiff understood that when he was placed on a temporary assignment with an Act-1 client, his sole employer would be Act-1, for purposes of wages, compensation and benefits.  (Dkt. 69, Ex. C).  On his Act-1 Employment Application, plaintiff agreed that he was "applying for employment with [Act-1]."  (Dkt. 69, Ex. A, Act-1 Application; Ex. B, Plaintiff Dep. 16-17).  Plaintiff further agreed that he was "not an employee of Client for purposes of wages, compensation and benefits" and that he did not have or could not acquire "any rights or benefits of any kind from Client during any period of [his]

3

temporary assignment." (Dkt. 69, Ex. C, Temporary Associate Confidentiality and Arbitration Agreement; Ex. B, Plaintiff Dep. 16-17).

The Temporary Personnel Service Agreement between Act-1 and HFHS specifically designates Act-1 as plaintiff's employer. (Dkt. 69, Ex. E, Temporary Personnel Service Agreement, pp. 12-14). Consistent with the Agreement, Act-1 issued all of plaintiff's paychecks and withheld all federal, state and local taxes from his pay during his assignment at HFHS. (Dkt. 69, Ex. F, Act-1 Compensation Documents; Ex. B, Plaintiff Dep. 156).

In September 2010, Act-1 assigned plaintiff to a temporary position in HFHS's Linen Department. (Dkt. 69, Ex. B, Plaintiff Dep. 23). Sometime thereafter, plaintiff interviewed with Danielle Burgess ("Burgess"), a supervisor in the HFHS Contact Center, for a temporary assignment in the Contact Center. *Id.* at 52-53. On October 11, 2010, plaintiff began a work assignment at HFHS as a Contact Center Advocate I. *Id.* at 23, 79. Plaintiff's job duties included taking calls from and scheduling patients for medical appointments. (Dkt. 69, Ex. B, Plaintiff Dep. 55). As part of his job duties, plaintiff admits that he was required to abide by the Attendance Policies of both Act-1 and HFHS. (Dkt. 69, Ex. B, Plaintiff Dep. 157) (Q: "Did you understand that you were expected to follow Henry Ford's Attendance Policy? A. Yes."). Pursuant to the Act-1's policies, attendance infractions within the first 90 days of a work assignment, resulted in

4

the end of the assignment:  "If you are late or have an unexcused absence during the first 90 days of your assignment, your assignment will be ended."  (Dkt. 69, Ex. G, Act-1 Important Notice).[1]  In addition, plaintiff was not allotted any days off until after the beginning of 2011.  (Dkt. 69, Ex. H, Act-1 Time Off Policy).[2]

Although plaintiff was not an employee of HFHS, he admits he was expected to comply with basic HFHS policies. (Dkt. 69, Ex. B, Plaintiff Dep, p. 57).  Plaintiff acknowledged receipt of HFHS' Code of Conduct ("Code of Conduct") on October 14, 2010.  (Dkt. 69, Ex. I, HFHS Code of Conduct; Ex. B, Plaintiff Dep. 56-57).  Pursuant to the Code of Conduct, plaintiff, as an "individual acting on behalf of HFHS," was required to abide by all HFHS policies and procedures, including the HFHS Attendance Policy.  (Dkt. 69, Ex. J, HFHS Attendance Policy; Ex. B, Plaintiff Dep. 157).

Plaintiff also admitted during his deposition that he understood the importance of attendance and punctuality.  (Dkt. 69, Ex. B, Plaintiff Dep., pp. 43, 53-55, 71, 145, 152, 157).  Specifically, plaintiff conceded that "excessive absenteeism and/or tardiness is a legitimate business concern" and that failing to report to work as scheduled 'disrupts the business operation." *Id*. at 55, 71. Plaintiff further admitted that it was reasonable for HFHS to expect plaintiff to

---

[1]  It is not clear from the record that plaintiff received or signed this document.

[2]  It is not clear from the record that plaintiff received or signed this document.

report to his assignment as scheduled.  *Id.* at. 43.

According to HFHS, plaintiff's repeated attendance infractions resulted in Act-1's termination of his HFHS assignment.  Plaintiff was repeatedly tardy and/or absent from work during his brief assignment at the HFHS Contact Center. Plaintiff does not dispute the following attendance infractions:

- October 18, 2010 - late returning from lunch while still in training;

- October 29, 2010 - absent;

- November 24, 2010 - left work 1.5 hours early;

- December 14, 2010 - 8 minutes late returning from break;

- December 17, 2010 - left work 6.5 hours early;

- December 22, 2010 - 6 minutes late returning from break;

- December 23, 2010 - 4 minutes late returning from break;

- January 10, 2011 - left work 2 hours early;

- January 24, 2011 - 2 hours, 2 minutes late for beginning of shift;

- January 25, 2011 - 2 hours, 17 minutes late for beginning of shift.

(Dkt. 69, Ex. B, Plaintiff Dep. 62-66; Ex. K, Attendance Calendars and Explanation of Absence forms; Ex. L, Written Statement, p. 7).  On January 25, 2011, plaintiff arrived over two hours late for his shift, for the second day in a row and after eight attendance infractions since October 2010.  According to HFHS, this resulted in a meeting with Kelly Fox (Act-1) and Danielle Burgess and Cyndy

Orrys (HFHS) about the violations.  (Dkt. 69, Ex. B, Plaintiff Dep. 65-70; Ex. M, Burgess Notes; Ex. N, 03/11/11 Letter).  HFHS maintains that plaintiff was clearly warned that his "attendance was poor" and that if it did not improve, his assignment would be terminated.  (Dkt. 69, Ex. B, Plaintiff Dep. 65-70; Ex. M, Burgess Notes; Ex. L, Written Statement, pp. 7-8).  Plaintiff acknowledged his understanding of Act-1's and HFHS's concerns and promised to improve his attendance.  (Dkt. 69, Ex. B, Plaintiff Dep. 69).

Nine days after this meeting, on February 3, 2011, plaintiff called in less than one hour before his shift to report that he would be four hours late to work. (Dkt. 69, Ex. K, Attendance Calendar and Explanation of Absence Form; Ex. N, 03/11/11 Letter; Ex. L, Written Statement, p. 8).  HFHS immediately requested Act-1 to terminate plaintiff's assignment.  (Dkt. 69, Ex. N, 03/11/11 Letter). According to Act-1, the decision to request the termination of plaintiff's assignment was made by Cyndy Orrys.  *Id*.  Plaintiff asserts no discriminatory animus against Orrys.  (Dkt. 69, Ex. B, Plaintiff's Dep. 123).

After his assignment at HFHS ended on February 3, 2011, HFHS says that plaintiff raised, for the first time, concerns regarding Burgess.  (Dkt. 69, Ex. B, Plaintiff Dep. 80-81; Ex. L, Written Statement).  Plaintiff indicated that during his assignment at HFHS, he verbally complained to Cyndy Orrys about "[h]ow [he] was being treated" but does not remember anything more specific about the

7

conversation.  However, plaintiff does not allege that he made any mention of gender or national origin discrimination during this alleged conversation.  (Dkt. 69, Ex. B, Plaintiff Dep. 119).

According to HFHS, with respect to the discrimination and harassment that plaintiff asserts in his complaint, he confines the allegations to just three incidents in which he claims Burgess "harassed" him.  First, plaintiff alleged Burgess spoke to him in a "demeaning manner."  (Dkt. 69, Ex. B, Plaintiff Dep. 124, 136).  HFHS points out that plaintiff did not claim that Burgess made any statements regarding his gender or national origin – only that she allegedly told plaintiff that he needed "to watch the things [he] said at the job" and that he "talk[ed] too much."  *Id*. at 126, 129.  Plaintiff also testified that "everybody in the [Contact Center] pod" – who were apparently all females of United States origin – complained about Burgess mistreating them.  *Id*. at 124, 136.  Second, plaintiff alleges Burgess shared with him that she had dated a Nigerian man in the past and that the relationship had not ended well.  (Dkt. 69, Ex. B, Plaintiff Dep. 128-129).  According to plaintiff, Burgess stated that as a result of this failed relationship, she did not trust men.  *Id*. at 127-128.  Finally, plaintiff alleges that Burgess told him on one occasion that she thought plaintiff was not being truthful.  (Dkt. 69, Ex. B, Plaintiff Dep. 127).  According to HFHS, plaintiff has not alleged that Burgess ever indicated to him she disliked or distrusted him because he is Nigerian or

8

male.  Plaintiff also testified that these three alleged incidents comprise all the facts supporting his claims in this matter.  *Id*. at 134.  Plaintiff does not allege that anyone other than Burgess "was engaging in this type of harassing or discriminatory behavior."  *Id*. at 123.

Nancy Farquharson, HFHS Human Resources Business Partner, conducted a detailed investigation of plaintiff's concerns pursuant to HFHS's Harassment Policy.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. O, Harassment Policy).  Farquharson interviewed Burgess, who denied making any negative statements based on Nigerian national origin or regarding men.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes).  Farquharson interviewed plaintiff's co-workers in the Contact Center, who all denied that Burgess had ever made any negative statements to plaintiff about his gender or national origin.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes).  HFHS points out that these co-workers stated that Burgess had always treated them and plaintiff in a respectful manner and that it was plaintiff who was disrespectful toward others in the Contact Center, including toward Burgess.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes).  Based on the lack of corroboration for plaintiff's assertions, Farquharson concluded that no discrimination or harassment had occurred, and she notified plaintiff of the results of the investigation by letter on March 11, 2011.  (Dkt. 69, Ex. N, 03/11/11 Letter).

9

Plaintiff filed an EEOC charge against HFHS on February 8, 2011.  (Dkt.

69-19).  In that charge, he complained of sex and national origin discrimination,

alleging that his supervisor subjected him to harassment and excessive discipline

based on his sex and national origin.  *Id*.  There does not appear to be any resulting

right to sue letter from the EEOC in the record.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

Summary judgment is appropriate when the record reveals that there are no

genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health

Partners of Ohio*, *Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of

Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas.

Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty

Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of

Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The

court must consider all pleadings, depositions, affidavits, and admissions on file,

and draw all justifiable inferences in favor of the party opposing the motion.  *See*

10

*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[3]

B.   Hostile Work Environment[4]

1.   Legal standards

Under the hostile work environment theory, in order to survive summary

---

[3]  Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988).  According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id*. ("The standard for granting summary judgment remains unchanged.").

[4]  HFHS asserts that plaintiff's amended complaint should be dismissed because it was never plaintiff's employer.  However, rather than address this issue, the undersigned finds it more expedient to address the merits of plaintiff's claims, which are brought under Title VII.

judgment, plaintiff must establish that: (1) he is a member of a protected class (male [or Nigerian]), (2) he was subjected to harassment, either through words or actions, based on sex [or race], (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Grace v. Uscar*, 521 F.3d 655, 678 (6th Cir. 2008), citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996). Moreover, "[t]he harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to a reasonable person and the actual victim.'" *Id.*, quoting *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006). Factors to consider in determining whether a hostile work environment actually exists include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.*, quoting *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 23 (1993) (emphasis omitted). In addition, "courts must determine whether the 'workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Id.* at 678-679, quoting *Harris*, at 21

(internal citations omitted). Failure to establish a *prima facie* case is grounds to grant a defendant summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Once a hostile work environment is established, an employee alleging sexual harassment by a coworker must still establish that the employer is liable because it knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action. *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001).

2. Parties' arguments

To be actionable under Title VII, Burgess's alleged harassment must have been based on plaintiff's gender or national origin. 42 U.S.C. 2000e-2. HFHS points out that there were two instances in which Burgess referenced national origin and gender. In the first instance, Burgess allegedly told plaintiff "on one occasion only" that she did not trust men following a failed romantic relationship but that "she was trying to regain her faith in men." (Dkt. 69, Ex. B, Plaintiff Dep. 127-128). In the second instance, Burgess allegedly told plaintiff that her failed relationship had been with a Nigerian man and that the man had allegedly stalked her. *Id*. at 127-129. HFHS argues that, these statements, if made by Burgess, merely involved her recounting her personal experience and were not based on plaintiff's gender or national origin. Plaintiff also alleges that Burgess told plaintiff he talked too much, was showing off and needed to calm down. (Dkt. 69,

13

Ex. B, Plaintiff Dep. 130).  HFHS points out that while plaintiff may have been offended by Burgess's alleged comments, none of them are actionable under Title VII because there is no evidence they were based on his gender or national origin. 42 U.S.C. 2000e-2; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (finding that Title VII is not a "general civility code").

And, according to HFHS, even assuming plaintiff could prove that the alleged statements by Burgess were based on his gender or national origin, he must also prove that the harassing statements were sufficiently severe and pervasive so as to alter his working conditions.  To survive a motion for summary judgment, a plaintiff must provide evidence that the harassment "is ongoing, commonplace and continuing." *Berryman v. SuperValu Holdings, Inc*., 669 F.3d 714, 717 (6th Cir. 2012).  The "sporadic use of abusive language, [ ] jokes, and occasional teasing" are not actionable as harassment under Title VII.  *Faragher*, 524 U.S. at 788.  Indeed, the Supreme Court "has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. Courts have set a high bar in determining whether conduct is sufficiently severe and pervasive so as to constitute harassment under Title VII.  For example, in *Williams v. CSX Transp. Co.*, Inc., 643 F.3d 502, 511 (6th Cir. 2011)., the plaintiff's supervisor allegedly made statements that referred to Jesse Jackson and Al Sharpton as "monkeys" and opined that "black people should 'go back to where

14

they came from.'" 643 F.3d at 513.  While the Court agreed that these comments were "certainly insensitive, ignorant and bigoted," they "more closely resemble a 'mere offensive utterance' than conduct that" violates Title VII. *Id*.  HFHS maintains that because Burgess's alleged statements fall far short of those at issue in Williams, which in turn fall short of violating Title VII, plaintiff has failed to make out a *prima facie* harassment claim.

HFHS also argues that, when plaintiff complained about the alleged harassing behavior, it took prompt remedial action.  A defendant can avoid liability where it proves that on learning of allegations of unlawful harassment, it takes "[s]teps that would establish a base level of reasonably appropriate corrective action" which "may include promptly initiating an investigation to determine the factual basis for the complaint, speaking with the specific individuals identified by the complainant, [and] following up with the complainant." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013).  On receipt of plaintiff's complaints, Nancy Farquharson conducted an investigation into plaintiff's allegations in accordance with the HFHS Harassment Policy.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. O, Harassment Policy).  Farquharson interviewed Burgess, who denied making any negative statements about people of Nigerian descent or of men.  (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes).  Although plaintiff declined to identify any co-workers who may have

15

witnessed Burgess's alleged mistreatment of plaintiff, Farquharson spoke with six of plaintiff's co-workers in the Contact Center, who all denied that Burgess had ever made any negative statements to plaintiff about his gender or national origin. (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes). These co-workers stated that Burgess had always treated them and plaintiff in a respectful manner and that it was plaintiff who had acted disrespectfully toward others, including Burgess, in the Contact Center. (Dkt. 69, Ex. N, 03/11/11 Letter; Ex. P, Investigation Notes). Based on her investigation, Farquharson concluded that no discrimination or harassment had occurred, and informed plaintiff of her findings on March 11, 2011. (Dkt. 69, Ex. N, 03/11/11 Letter). Thus, HFHS contends that plaintiff has no evidence to show that Farquharson's prompt investigation was inadequate, and summary judgment is therefore proper for this additional reason. *Waldo*, 726 F.3d at 814. Act-1 makes similar arguments in its motion for summary judgment. (Dkt. 67).

In his combined amended response, plaintiff says he was subject to unwelcome harassment by Burgess because he brought his girlfriend onto the job without telling Burgess. (Dkt. 91, Pg ID 1030). He says Burgess was upset after an altercation between plaintiff's current and former girlfriend. Plaintiff points to Burgess's statement that she used to have a relationship with a Nigerian man that did not end well. *Id*. Plaintiff argues that his complaints about Burgess were

16

confirmed by other employees, who reported to Ms. Farquharson that they heard

him complain.  According to plaintiff, he must have been complaining about the

harassment by Burgess.  (Dkt. 91, Pg ID 1031).  Plaintiff also points to alleged

harassment of another man by Burgess and that a female employee with

attendance issues was treated differently, but does not explain how this relates to

his hostile work environment claim.[5]

### 3.    Analysis and Conclusion

The undersigned agrees with HFHS that plaintiff has not shown that any

alleged harassment was based on his race/national origin or gender.  HFHS

correctly points out that "generic" harassment based on "personal displeasure"

toward the plaintiff – or anything other than a Title VII-protected characteristic –

is not actionable under Title VII.  *See E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d

498, 520 (6th Cir. 2001); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784,

791 (6th Cir. 2000).  Plaintiff even admits that Burgess's alleged "harassment" of

him occurred because he went behind her back to get his girlfriend a job at the

Contact Center, causing Burgess to be embarrassed.  (Dkt. 91, Pg ID 1031)

(Plaintiff states that he "was subjected to unwelcomed harassment by the

Defendants supervisor due to the Plaintiff bringing his girlfriend into the job

---

[5]  Notably, much of plaintiff's argument on this issue relates to exhibits that he is
prohibited from using in support of his opposition to the motion for summary judgment.  (Dkt.
102).

without telling Burgess.").  Plaintiff also admitted that he was not singled out for Burgess's alleged mistreatment because "everybody in the pod" was allegedly mistreated by Burgess.  (Dkt. 69, Ex. B, Plaintiff Dep., pp. 124, 136); *see Harbert-Yeargin*, 266 F.3d at 520 (a supervisor who equally mistreats workers from inside and outside a protected class has not violated Title VII because the mistreatment is not "because of" membership in a protected class.).  For this reason, plaintiff's hostile work environment claim fails equally as to both defendants as the claims are based on the same conduct.

The undersigned also concludes that the alleged harassment described by plaintiff was not sufficiently severe or pervasive.  While plaintiff believes the harassment he suffered was because of his race and gender, that simply does not create an issue of fact.  While it may satisfy the subjective prong of the hostile work environment test under *Harris v. Forklift Systems*, it does not, in and of itself, create a material issue of fact because plaintiff must also satisfy the objective prong of that test, which requires an environment sufficiently severe or pervasive so as to create the type of environment that a reasonable person would find it to be hostile or abusive.  While there is no magic number of incidents that must occur within a certain period of time, when comparing the conduct of which plaintiff complains to those in this Circuit where a hostile work environment was found to exist, plaintiff's claim simply comes up short.  For example, in *Clay*, the

Sixth Circuit concluded that 15 incidents over a two-year period was not sufficiently pervasive. The incidents recounted in *Clay* were far more severe and pervasive than those identified by plaintiff.[6] *See also Clay*, 501 F.3d at 708, comparing *Jordan v. City of Cleveland*, 464 F.3d 584, 598 (6th Cir. 2006) (conduct was sufficiently severe or pervasive when for over ten years plaintiff was exposed to racial slurs, demeaning jokes, and inflammatory graffiti, experienced "isolation and segregation" and "disparate discipline and additional duties.") with *Burnett v. Tyco Corp.*, 203 F.3d 980, 984-85 (6th Cir.), *cert. denied*, 531 U.S. 928 (2000) (three sexually offensive remarks made by the plaintiff's supervisor at the beginning and end of a six-month period did not constitute pervasive discriminatory conduct). Here, the conduct alleged does not satisfy the objective prong and thus, summary judgment in favor of both defendants on plaintiff's

---

[6] In *Clay*, plaintiff alleged that: her supervisors had prevented her from applying for and obtaining certain job positions; adversely transferred her to an undesirable shift; assigned to her job duties that she was not physically capable of performing and not qualified for, requiring very heavy lifting, ultimately leading to a groin injury; criticized her for eating during work, for leaving her work station to get a cup of coffee, for using the bathroom at the end of her break, and for the size of her earrings; assigned her tasks outside of her job description; falsely accused her of taking boxes while on company time; while she was on leave for the groin injury, someone cut the lock on her desk, removed supplies, and placed them in a box, although a white co-worker was able to store his supplies in a locked desk drawer; accused her, in front of other employees, of standing around on the job because she ate a doughnut while waiting for a coworker who asked for her assistance; criticized her for the route she took, but did not chastize her white co-workers who took the same route and had her timed to record how long it took her to get to her work station.

hostile work environment claim should be granted.[7]

C.   Discrimination

1.   Legal Standards

Plaintiff alleges that he was discharged based on his gender and national

origin in violation of Title VII, 42 U.S.C. § 2000e *et seq*.  Absent direct evidence

of discrimination, a plaintiff may rely on circumstantial evidence to establish a

case of gender discrimination under the familiar burden-shifting framework of

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  In order to establish a

*prima facie* case for Title VII gender discrimination under that framework,

plaintiff must show that: (1) he belongs to a protected class, (2) he suffered an

adverse employment action, (3) he was qualified for the position, and (4) that the

job was given to a person outside the protected class or that he was treated

differently than a similarly situated, non-protected employee.  *Abdulnour v.*

*Campbell Soup Supply Co.,* 502 F.3d 496, 501-02 (6th Cir. 2007); *Lyons v.*

*Metropolitan Gov't of Nashville & Davidson Cnty.,* 416 Fed. Appx. 483 (6th Cir.

2011).  In the event that plaintiff establishes a *prima facie* case, HFHS can rebut it

by articulating a legitimate non-discriminatory reason for its action.  *Id.*

Thereafter, plaintiff has the burden of showing, by a preponderance of the

---

[7] Given the foregoing conclusions regarding plaintiff's failure to establish a prima facie case, HFHS's claim that it conducted a prompt reasonable investigation on learning of the hostile work environment claim need not be addressed.

evidence, that the legitimate asserted reason was not the actual reason for

defendant's actions, but in fact was pretext for gender discrimination. *Chen v.*

*Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Plaintiff may establish that

defendant's proffered reasons is mere pretext by establishing that it: (1) has no

basis in fact; (2) did not actually motivate plaintiff's termination; or (3) was

insufficient to warrant plaintiff's termination. *Abdulnour*, 502 F.3d at 502 (citing

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

2.    Parties' Arguments

HFHS maintains that plaintiff cannot make a showing as to the third

element of the prima facie case, which requires plaintiff to demonstrate that he

was performing his assignment "at a level which met [HFHS's] legitimate

expectations." *McDonald v. Union Camp Corp*., 898 F.2d 1155, 1160 (6th Cir.

1990). In *McDonald*, the plaintiff was a manager at the defendant's factory who

"had been criticized" for various disciplinary issues. 898 F.2d at 1158. The Court

held that "if McDonald was not doing what his employer wanted him to do, he was

not doing his job . . . McDonald does not raise a material issue of fact on the

question of the quality of his work merely by challenging the judgment of his

supervisors." *Id*. at 1160. The plaintiff did not dispute that his supervisors were

dissatisfied with his job performance, but he argued that his employer "made too

big a deal out of his alleged 'people problems.'" *Id*. The Court held that "the aim

21

is not to review bad business decisions, or question the soundness of an employer's judgment." *Id*. By admitting that he "was simply not performing to Union Camp's satisfaction," the plaintiff's concession required the conclusion that "there remains no genuine issue of material fact as to whether he was qualified." *Id*. Summary judgment was therefore proper. *Id*. HFHS also points to *Jones v. Delphi Packard Elec. Sys.*, 208 F.3d 213 (6th Cir. 2000) (unpublished), where the plaintiff's employment was terminated due to poor attendance and leaving work without obtaining proper authorization. The Court held that as a result, the plaintiff failed to prove she was qualified for her position because she "was not doing what [her] employer wanted [her] to do, [she] was not doing [her] job." *Id*. It was "clear" to the Court that the plaintiff "failed to show that she was performing her job to her employer's satisfaction due to her repeated absences from work." *Id*.

According to HFHS, plaintiff concedes that during his assignment at HFHS, he was required to abide by the Attendance Policies of both HFHS and Act-1. (Dkt. 69, Ex. B, Plaintiff Dep. 152-157; Ex. G, Act-1 Important Notice; Ex. H, Act-1 Time Off Policy; Ex. E, Temporary Personnel Service Agreement 13; Ex. I, HFHS Code of Conduct; Ex. J, HFHS Attendance Policy). Plaintiff also admitted that "excessive absenteeism and/or tardiness is a legitimate business concern" and that his failing to report to work as scheduled "disrupts the business operation."

*Id*. at 55, 71.  Plaintiff further admitted that it was reasonable for HFHS to expect

Plaintiff to report to his assignment as scheduled.  *Id*. at 43.  Nonetheless, plaintiff

admitted that during his brief assignment at HFHS, he consistently violated the

Attendance Policies.  (*Id*. at 62-66; Ex. K, Attendance Calendars and Explanation

of Absence forms; Ex. L, Written Statement).  While plaintiff may argue that

HFHS made "too big a deal out of" his attendance issues, HFHS points out that the

Sixth Circuit has specifically rejected this argument and has held that courts are

not permitted to substitute their judgment for the business decisions of employers.

*McDonald*, 898 F.2d at 1160.  As in *Jones*, HFHS contend that it is "clear" that

plaintiff "failed to show that [he] was performing [his] job to [his] employer's

satisfaction due to [his] repeated absences from work."  208 F.3d at 213.

The fourth element of the *prima facie* case requires plaintiff to prove that he

was treated differently than a similarly situated, female and non-Nigerian workers.

*Abdulnour*, 502 F.3d at 501-02.  However, plaintiff testified that "[e]verybody in

the pod complained" about Burgess's treatment of them.  (Dkt. 69, Ex. B, Plaintiff

Dep. 137).  According to plaintiff, the majority of the individuals who claimed

they were mistreated by Burgess were females of United States origin.  *Id*. at

136-137).  Therefore, plaintiff was not treated any differently than similarly

situated female or non-Nigerian workers. Again, Act-1 presents similar arguments

in its motion for summary judgment.  (Dkt. 67).

23

In his combined amended response, plaintiff disputes that he knew or understood the attendance policies of either defendant.  (Dkt. 91, Pg ID 1044-1045).  But then plaintiff goes on to say that he "signed Act-1's and HFHS['s] Attendance Policy, although Act-1 claims they do not have knowledge or whereabouts of the signed document..."  (Dkt. 91, Pg ID 1045).  Plaintiff also asserts that the only documentation he acknowledges signing is the HFHS Policy and Procedures.  (Dkt. 91, Pg ID 1045).  Plaintiff points out that the HFHS attendance policy does not apply to contingent employees and thus appears to be arguing that he is a contingent employee.  *Id*.  He also says the policy does not apply to employees in their introductory period.  *Id*.  Plaintiff's comparator for his disparate impact claim – Rachel Fitzpatrick – was disallowed by Judge Edmunds in the March 3, 2015 Order.  (Dkt. 102).

Plaintiff also argues that, contrary to defendants' contentions, some of his purported attendance issues were "scheduled."  (Dkt. 91, Pg ID 1046).  Plaintiff goes on to describe various issues he had, including a doctor's appointment for his son, an eviction issue, being sent home sick when he was not sick.  According to plaintiff, he "never did anything regarding his attendance without giving early notice to Burgess and to Act-1's Kelly Fox when Plaintiff was late returning from lunch his supervisor Burgess was given notice via email."  (Dkt. 91, Pg ID 1047).  According to plaintiff, Burgess never told him that he was in violation of the

24

attendance policy until the January 25, 2011 meeting, thus creating a path to terminate plaintiff. *Id.* Plaintiff says his attendance was treated differently than other similarly situated contingent employees who were female. *Id*. at 1048.

### 3.    Analysis and Conclusions

It is well-settled in cases like this one involving claims of alleged disparate application of disciplinary procedures, that the parties to be compared must be similarly situated in all relevant respects; that is, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the *same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis added, citation omitted); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (to be deemed "similarly situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). "[S]imilarly-situated employees must simply have been engaged in misconduct of comparable seriousness." *See Harrison v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 80 F.3d 1107, 1115 (6th Cir. 1996), *overruled on*

25

*other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 (6th Cir. 1999).

Thus, plaintiff must compare himself to a female, white, or non-Nigerian

employee who reported to the same supervisor, who engaged in the same type of

conduct, and who was not terminated. Plaintiff has simply not done so and thus,

his discrimination claim against both defendants fails.[8]

    D.    <u>Retaliation</u>

        1.    Legal standards

 "The plaintiff must make out a prima facie case of retaliation by

establishing four elements: (1) the plaintiff engaged in an activity protected by

Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3)

the defendant took an employment action against the plaintiff that a reasonable

employee would have found materially adverse; and (4) there was a causal

connection between the protected activity and the adverse employment action."

*Watson v. City of Cleveland*, 202 Fed.Appx. 844, 855 (6th Cir. 2006). In the

absence of direct evidence, proof of a Title VII retaliation claim is controlled by

*McDonnell Douglas*, just as with a discrimination claim. In this case, plaintiff has

---

[8] The only potential comparator identified by plaintiff, Rachel Fitzpatrick, falls within the category of evidence plaintiff is not permitted to use because it was not identified by plaintiff during discovery. (Dkt. 102). Given the foregoing conclusions regarding plaintiff's failure to establish that he was treated differently from any similarly situated white, female, or non-Nigerian employees, the undersigned declines to address the additional arguments raised by defendants, including that plaintiff was terminated for a legitimate business reason and cannot establish pretext.

not offered any direct evidence of retaliation.  Thus, plaintiff's retaliation claim

must be analyzed under the *McDonnell-Douglas* burden-shifting framework,

which provides that if the plaintiff establishes a *prima facie* case, then the burden

shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for

its action. *McDonnell Douglas*, 411 U.S. at 802.  Because the ultimate burden of

persuasion rests with the plaintiff, once the defendant comes forward with

legitimate nondiscriminatory reasons for its actions, the plaintiff has to

demonstrate by a preponderance of the evidence that the employer's reasons were

pretextual. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987).  The plaintiff has

the ultimate burden of persuasion even though a *prima facie* case, once

established, shifts the burden of producing evidence to the defense.  *Id*.

     To establish pretext, a plaintiff must show "'either (1) that the proffered

reasons had no basis in fact, (2) that the proffered reasons did not actually

motivate [his] discharge, or (3) that they were insufficient to motivate discharge.'"

*Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008), quoting

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F. 3d 1078, 1084 (6th Cir. 1994),

overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir.

2009).  "For an employer to avoid a finding that its claimed nondiscriminatory

reason was pretextual, the employer must be able to establish its reasonable

reliance on the particularized facts that were before it at the time the decision was

27

made." *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (internal citations omitted).  However, "[t]he investigation process does not need to be perfect, but the employer must make a reasonably informed and considered decision before taking an adverse employment action." *Id.* (internal citations and quotation marks omitted).

In order to determine whether the plaintiff has raised a genuine issue of material fact as to pretext, the Court must consider not whether defendant's reasons for taking an adverse action against the plaintiff were actually good reasons, but instead whether the defendant had an honestly held belief that they were. *See Alan v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. [W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Id.*, quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007).  "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516,

28

526 (6th Cir. 2008), quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

2.   Parties' Arguments

HFHS first argues that plaintiff's retaliation claim fails because he fails to file a timely charge with the EEOC.  It is "firmly established that a Title VII plaintiff must, as a prerequisite to suit, (1) file a timely charge of employment discrimination with the EEOC, and (2) receive and act upon the Commission's statutory notice of the right to sue." *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984); 42 U.S.C. 2000e-5(e)(1).  Plaintiffs who have attempted to bypass this requirement have been "repeatedly rebuffed." *Id*.  A plaintiff's complaint in federal court may include a claim not included in the charge only if that claim is "reasonably expected to grow out of the charge of discrimination," *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991) (overruled on other grounds, *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)).  A retaliation claim based on conduct that allegedly occurred prior to the filing of the EEOC charge does not "grow" out of the charge. *Id*. at 547.  In *Ang*, the plaintiff filed an EEOC charge and checked the box for national origin discrimination but not retaliation, although a box for retaliation was listed on the form. *Id*. at 545.  However, in the complaint he filed in federal court, the plaintiff alleged his internal complaints about his treatment were grounds for retaliation. *Id*. at 547.  Because the alleged

29

retaliation "could have been alleged in the original charge," the court affirmed the trial court's decision that the plaintiff failed to exhaust his administrative remedies with respect to retaliation. *Id*. at 547, 550. *See also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (plaintiff neither checked box for retaliation nor described any retaliatory conduct in EEOC charge, so retaliation claim based on internal complaint of sexual conduct that allegedly occurred prior to filing of EEOC charge was properly dismissed); *Davenport v. West*, 124 F.3d 197, *4 (6th Cir. 1997) (the alleged retaliatory conduct "existed prior to and at the time [plaintiff] filed her EEOC charges," and her retaliation claim was therefore not administratively exhausted); *Minnis v. McDonnell Douglas Technical Servs. Co.*, 162 F.Supp.2d 718, 738 (E.D. Mich 2001) (dismissing the retaliation claim and holding "[b]ecause the conduct which Plaintiff here bases his retaliation claim occurred before he filed his EEOC charge, in order to be entitled to pursue this claim in this action, Plaintiff would have had to have included allegations of retaliation in his charge").

In this case, plaintiff filed his EEOC Charge, approximately five days after his assignment at HFHS ended. (Dkt. 69, Ex. R, Charge). According to HFHS, plaintiff neither checked the box for "Retaliation" nor included any allegations of retaliation in his Charge. *Id*. Rather, plaintiff stated that the most recent incident of alleged unlawful conduct occurred on February 1, two days before the alleged

30

retaliatory termination, even though his termination had already occurred at the time he filed the Charge. (Dkt. 69, Ex. R, Charge).  HFHS also points out that plaintiff failed to check the "Retaliation" box on his EEOC Intake Questionnaire, despite the instruction to do so if he "complained about discrimination . . . and a negative action was threatened or taken." (Dkt. 69, Ex. R, Intake Questionnaire.) Thus, HFHS maintains that plaintiff's retaliation claim should be dismissed.[9]

### 3.    Analysis and Conclusions

In his response, plaintiff failed to dispute HFHS's assertion that he did not exhaust his administrative remedies as to his retaliation claim.  Notably, the Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails to respond, "its opportunity is waived and its case wagered." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).  "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Id*.  The trial court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Id*. at 407.  Therefore, if a party meets its burden in moving for summary judgment on the unopposed issues, then summary judgment

---

[9]  This claim does not appear to apply to Act-1 and Act-1 did not move for summary judgment on the retaliation claim.  To the extent plaintiff's complaint could be read to include a retaliation claim against Act-1, it likewise fails for the same reasons as that against HFHS.

would be proper. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

While Title VII requires exhaustion, the requirement that a claim be presented in an EEOC charge is not jurisdictional. *Hill v. Nicholson*, 2010 WL 2640261*3 (6th Cir. 2010), citing, *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401-02 (6th Cir. 2008). Because Title VII's exhaustion requirements are not jurisdictional, "they are subject to waiver, estoppel, and equitable tolling." *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002), citing, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Richards v. Dep't of Army*, 2007 WL 579549, *2 (6th Cir. 2007). The "expected scope of investigation test" requires a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). Under this test, where a plaintiff did not adequately identify a retaliation claim in the EEOC charge, a defendant may still have potential liability for retaliatory conduct where such liability could "reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is

32

not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002), quoting, Davis, 157 F.3d at 463 (internal quotation marks omitted). The Sixth Circuit has specifically held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge[ ] [because] the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir.1991), quoting, *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). This is so because "retaliation claims, by definition, arise after the filing of the EEOC charge, [and thus] this rule promotes efficiency by requiring only one filing." *Id.*

The undersigned concludes that HFHS has sufficiently shown that plaintiff's retaliation claim was not exhausted. The EEOC charge did not include a retaliation claim, his EEOC questionnaire did not mention the retaliation claim, and the facts of his retaliation claim were known to him before he filed his EEOC charge. And, plaintiff has simply not addressed it, thus conceding it. For these reasons, summary judgment on the retaliation claim should be granted in HFHS's favor. In light of the conclusion, the other bases asserted by HFHS in support of its summary judgment motion on the retaliation claim need not be addressed.

33

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment (Dkt. 67, 69) be **GRANTED** and plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 20, 2015                         s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 20, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Samuel Omabele, 16201 Cruse Street, Detroit, MI 48235.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov